Steven EARL and Ella Earl, Plaintiffs-Respondents,

v.

GULF & WESTERN MANUFACTURING COMPANY, Defendant-Appellant,

SAFEGUARD MANUFACTURING COMPANY, a Connecticut corporation, Univeral Safety Equipment Company, an Illinois corporation, Franklin Electric Company, a Wisconsin corporation and Liberty Mutual Insurance Company, a foreign corporation, Defendants.†

Court of Appeals

No. 84–959. Submitted on briefs December 10, 1984.—
Decided February 14, 1985.
(Also reported in 366 N.W.2d 160.)

† Petitions to review and cross-review denied.

202

For the defendant-appellant the cause was submitted on the briefs of *Borgelt, Powell, Peterson & Frauen, S.C.*, with *Frank A. Scherkenbach* and *Lawrence M. Shindell* of counsel, of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the briefs of *Habush, Habush & Davis, S.C.*, with *William M. Cannon* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

WEDEMEYER, P.J.   Gulf & Western Manufacturing Company appeals from a nonfinal discovery order entered in a product liability suit filed against it by Steven and Ella Earl. The trial court ordered Gulf & Western to answer interrogatories propounded by the Earls. It also denied Gulf & Western's motion for a protective order prohibiting the Earls from disclosing the information discovered to persons unconnected with this case. We hold that the scope of the trial court's discovery order was unduly broad and that Gulf & Western may be compelled to answer the Earls' interrogatories only with respect to presses of the model No. 28½. We further hold that because Gulf & Western failed to establish that it was entitled to a protective order, the trial court's refusal to grant such an order was not a misuse of discretion. We therefore affirm the trial court's order in part and reverse it in part.

Steven Earl was injured on February 2, 1981, when his hand and part of his arm were amputated by a punch press he was operating. The press, a model No. 28½ multipurpose open-back inclinable press, was manufactured in 1944 by E.W. Bliss Company, a subsidiary of Gulf & Western. The press was manufactured and shipped without guard or safety devices to prevent an operator's hands from being caught in the press when it cycled. At the time of Earl's injury, the press had been equipped with a "pullback" device, not installed by Gulf & Western, which was designed to remove the operator's hands from the die pinch area during operation.

The Earls filed suit against Gulf & Western claiming negligence and strict liability for failing, among other things, to provide reasonable safeguards on the press. They served interrogatories on Gulf & Western seeking information on (1) injuries sustained by other individuals operating power presses; (2) current litigation against Gulf & Western stemming from accidents with

power presses; and (3) with respect to any power press shipped to Germany, Sweden, Great Britain, or any other country, the date the press was manufactured, where it was sent, all standards promulgated by the recipient country with which the press complied, whether it had any point-of-operation guards or devices, and if so, what they were. Gulf & Western answered the interrogatories only with respect to model No. 28½ Bliss presses equipped with pullbacks.

The Earls moved to compel more complete answers to the interrogatories. Gulf & Western moved for a protective order directing that its answers to the interrogatories be held confidential. The trial court ordered Gulf & Western to answer the interrogatories with respect to the years 1920 through 1984, as to all sizes of inclinable and bench power presses, and all horning and wiring presses of the side wheel type. It further ordered Gulf & Western to answer the interrogatories regarding the standards imposed by other countries that applied to the same group of presses, including presses which were made domestically and shipped abroad and presses which were made abroad and shipped here. The trial court denied Gulf & Western's motion for a protective order.

Gulf & Western contends on appeal that the information ordered to be produced is not "relevant to the subject matter involved in the pending action," sec. 804.01 (2) (a), Stats., and that producing the information will cause undue burden and expense to Gulf & Western. We agree and therefore modify the trial court's order.

The standard of review of a discovery order is whether the trial court misused its discretion. *Shibilski v. St. Joseph's Hospital,* 83 Wis. 2d 459, 470–71, 266 N.W.2d 264, 270 (1978). A proper exercise of discretion requires a statement on the record of the trial court's reasoned

application of the appropriate legal standard to the relevant facts of the case. *Martin v. Griffin,* 117 Wis. 2d 438, 442, 344 N.W.2d 206, 209 (Ct. App. 1984). If there is no statement of the trial court's reasoning, the reviewing court may examine the record to determine whether the facts support the trial court's decision. *Id.* at 443, 344 N.W.2d at 209. The trial court misuses its discretion when it bases its decision on an error of law. *Barstad v. Frazier,* 118 Wis. 2d 549, 554, 348 N.W.2d 479, 482 (1984).

*Type of Press*

Information need not be admissible at trial in order to be subject to discovery; however, it must be "reasonably calculated to lead to the discovery of admissible evidence." Sec. 804.01(2)(a), Stats. Thus, the admissibility of the material requested or the information to which the requested material will lead is relevant to the determination of whether it is discoverable.

■

Evidence of prior accidents is admissible in a product liability case to show that the claimed defect existed, that the defect caused the plaintiff's injury, and that the defendant knew or should have known of the existence of the defect. *Lobermeier v. General Telephone Co.,* 119 Wis. 2d 129, 150, 349 N.W.2d 466, 476, *on reconsideration,* 120 Wis. 2d 419, 355 N.W.2d 531 (1984). The evidence should be admitted only where the accidents occurred under conditions and circumstances similar to those of the accident which injured the plaintiff. *Id.* The criterion "similar conditions or circumstances" includes similarity of the product involved. *See Walker v. Trico Manufacturing Co.,* 487 F.2d 595, 599–600 (7th Cir. 1973); *cert. denied,* 415 U.S. 978 (1974); *Uitts v. General Motors Corp.,* 58 F.R.D. 450, 452 (E.D. Pa. 1972).

Edward Freeland, Bliss's manager of product liability, stated in an affidavit that the presses manufactured by Bliss had different sizes; different standard tonnage, clutch, and stroke specifications; different tonnage, clutch, and stroke capacities; different types of activating controls; different capacities for metal feeding and ejection; and differences in being geared or nongeared. He stated in another affidavit that Bliss had manufactured hundreds of thousands of presses since it began manufacturing presses in 1857, and that the group of presses covered by the trial court's order constituted approximately 80% of the company's total output. We conclude, given the differences in the presses manufactured and the large number of presses covered by the trial court's order, that the order is unduly broad and thus represents a misuse of discretion. We conclude that Gulf & Western should be compelled to answer the Earls' interrogatories only with respect to presses of the same model, No. 28½, as that which injured Steven Earl.[1]

The record does not indicate the date that model No. 28½ presses were first manufactured. The trial court limited discovery to those accidents which occurred during or after 1920, but gave no reason for picking that particular date. We surmise that the trial court was attempting to avoid undue burden and expense to Gulf & Western. The question whether the burden and expense of producing information in a particular case is excessive in light of the information's value is a ques-

[1] The trial court may allow the Earls access to E.W. Bliss Company's accident file in lieu of ordering the interrogatories answered, if the conditions of sec. 804.08(3), Stats., are met. See Vincent & Vincent, Inc. v. Spacek, 102 Wis. 2d 266, 273, 306 N.W.2d 85, 88 (Ct. App. 1981).

tion of law which we determine independently. *See Vincent & Vincent, Inc. v. Spacek*, 102 Wis. 2d 266, 272–73, 306 N.W.2d 85, 88 (Ct. App. 1981).

Here, Freeland stated in his deposition that Bliss had manufactured fewer than 600 model No. 28½ presses. Accidents on model No. 28½ presses which occurred before 1920 would be as relevant as accidents which occurred after 1920. The burden of producing accident records from fewer than 600 presses is insufficient to justify prohibiting discovery of relevant evidence. The Earls should be allowed to discover information regarding all accidents on model No. 28½ presses which have occurred since the date they were first manufactured.

*Foreign Shipments*

Gulf & Western argues that the trial court's order requiring it to produce information regarding foreign standards, shipments, manufacturing and guarding of presses calls for irrelevant information. We disagree. If other countries required Gulf & Western to install safety features on their presses in addition to those which Gulf & Western installed routinely, that information would be relevant to show that Gulf & Western had notice that additional guarding was considered necessary by presumably reasonable people and that unguarded presses might be unreasonably dangerous. The trial court's order does not require the production of irrelevant information.

Gulf & Western also argues that producing the information would be unduly burdensome. This is a question of law, which we determine independently. *Vincent, supra.* Freeland testified in his deposition that Bliss kept no separate file of export documents and that

identifying all foreign-shipped presses would require a search through all of Bliss's serial record cards or through all of its order books. He also stated, however, that Bliss kept a set of record cards which were filed by model number and that Bliss had manufactured fewer than 600 model No. 28½ presses. In light of our modification of the discovery order limiting its scope to model No. 28½ presses, we conclude that compliance with the order in regard to foreign shipments will not be unduly burdensome to Gulf & Western.

*Confidentiality Order*

The trial court denied Gulf & Western's motion for an order that the Earls, their counsel, and their expert witnesses keep any information discovered confidential. It gave no reasons for its decision, however. The standard of review of such a protective order is whether the trial court misused its discretion. *State v. Beloit Concrete Stone Co.*, 103 Wis. 2d 506, 511, 309 N.W.2d 28, 30 (Ct. App. 1981). We have reviewed the record and conclude that the trial court did not misuse its discretion, because Gulf & Western failed to establish that it was entitled to a protective order.

Section 804.01(3), Stats., provides in part:

(a) Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

The burden of establishing "good cause" is on the party seeking the protective order. *Vincent*, 102 Wis. 2d at 272, 306 N.W.2d at 88.

The only reason advanced by Gulf & Western for the protective order is its fear that the Earls might pass

the information along to other plaintiffs involved in litigation against Gulf & Western. This does not rise to the level of "good cause" for a protective order. Gulf & Western has not shown that it has a legitimate interest in denying parties to other lawsuits access to the information. If the information is irrelevant to the issues raised in those cases, it will not be admissible against Gulf & Western; if it is relevant, the other plaintiffs can discover it from Gulf & Western in any event, and their obtaining it from the Earls will save Gulf & Western the trouble and expense of producing the same information several times over.

Gulf & Western argues that there is no reason why the Earls should be allowed to disseminate the information "at will" because doing so will not help their case. Gulf & Western misunderstands its burden on a motion for a protective order. The presumption is that no order is necessary; the movant must show a positive reason (*i.e.*, "good cause") for the entry of an order. It is insufficient merely to argue that no reason exists not to enter an order. The trial court did not misuse its discretion by denying Gulf & Western's motion for a protective order.

*By the Court.*—Order affirmed in part and reversed in part.