**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 16, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1484**

Cir. Ct. No. **2016CV6184**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

PARK MEADOWS HOMES ASSOCIATION, INC.,

PLAINTIFF-APPELLANT,

V.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

DEFENDANT-RESPONDENT.

APPEAL from orders of the circuit court for Milwaukee County: JOHN J. DiMOTTO and TIMOTHY M. WITKOWIAK, Judges. *Affirmed*.

Before Brash, P.J., Brennan and Dugan, JJ.

¶1      BRENNAN, J. Park Meadows Homes Association, Inc., (Park Meadows) appeals from a February 14, 2017 order[1] that stayed its lawsuit against its insurer, American Family Mutual Insurance Company (American Family), and compelled Park Meadows to have its loss appraised pursuant to a policy provision allowing either party to "make written demand for an appraisal of the loss."[2]  Park Meadows had sued for breach of contract and bad faith after disagreeing with American Family about the extent of property damage caused by an August 2014 hail and wind storm.  Park Meadows submitted reports from two consulting firms stating—without providing an estimated cost—that as a result of the storm, total roof replacement was needed for all insured structures:  twenty-nine residential buildings, one pool house, and one shed.  American Family's assessment was that the total amount of the loss was $100,628.30, which included replacing some shingles on some buildings.  Following the trial court's order and a stipulation by the parties that the appraisal panel was authorized to address the scope and cause of the damage, the panel issued a binding award to Park Meadows, determining that the loss amount for the claim was $145,725.35.  American Family timely paid the balance owed.

¶2      Following the appraisal, when the litigation resumed, the trial court denied Park Meadows' motion for reconsideration and granted American Family's motion for summary judgment,[3] concluding that American Family had not

---

[1] The order compelling appraisal and staying the lawsuit until its completion was entered by the Honorable John J. DiMotto.

[2] Pursuant to the policy, the appraisal is done by a panel made up of one "competent and impartial appraiser" selected by each party and an umpire selected by the two appraisers.

[3] The orders denying reconsideration and granting summary judgment were entered by the Honorable Timothy M. Witkowiak.

breached the contract and that without a breach there was no basis for a bad faith claim. Park Meadows also appeals those orders.

¶3     Under the unambiguous language of the policy that binds the parties, American Family's right to appraisal is triggered by a disagreement "on the amount of loss." The trial court found that Park Meadows did not provide American Family an "amount of loss" at any time prior to filing suit, and that finding is not disputed on appeal. Under applicable case law from our supreme court,[4] the only circumstance under which an insurer is precluded from invoking its appraisal right under the policy after the insured sues over its claim is when it delays invoking the right despite having "ample opportunity" to do so prior to the commencement of the suit. Because the policy gives American Family the right to appraisal only after it has received an "amount of loss" from its insured, and because Park Meadows did not provide an amount of loss prior to commencing the suit, American Family did not have the opportunity to invoke its right. Therefore, we conclude it was not barred from doing so after the commencement of the lawsuit.

¶4     We also conclude that Park Meadows has not identified any genuine issues of material fact and that summary judgment was properly granted. We affirm.

---

[4] *Farmers Auto. Ins. Ass'n v. Union Pacific Railway Co.*, 2009 WI 73, ¶36, 319 Wis. 2d 52, 768 N.W.2d 596 ("*Lynch [v. American Family Mutual Insurance Co.*, 163 Wis. 2d 1003, 473 N.W.2d 515 (Ct. App. 1991)] did *not hold that invocation of a binding appraisal clause is per se precluded* after one party files suit" (emphasis added). "Rather, *Lynch* held that the insurer in that case could not invoke the appraisal clause when it 'had ample opportunity' to do so before suit was filed." *Id.* (citing *Lynch*, 163 Wis. 2d at 1013)).

3

## BACKGROUND

¶5   This case concerns the Businessowners Policy issued by American Family to Park Meadows.   Park Meadows is a condominium management association.   The policy provided coverage for the structures in Park Meadows' condominium complex.

¶6   A hail and wind storm on August 1, 2014, caused damage to Park Meadows' buildings.   In May 2015 Park Meadows submitted a claim, and that same month, after inspecting the roof damage, American Family paid the claim[5] based on what it determined to be covered damages, including compensation for some shingle damage.

¶7   Park Meadows then presented American Family with two reports, both of which concluded that the hail damage to the buildings was so extensive that it required full roof replacement for all of the buildings.   Neither report contained an estimate of the cost.   Between August 2015 and March 2016, American Family made repeated written and verbal requests to Park Meadows for an estimate.

¶8   After it received Park Meadows' reports, American Family had an engineer conduct an additional inspection in June 2016.   The engineer concluded

---

[5] American Family determined that there was covered damage to roof and furnace vents, flashing, aluminum siding and trim, window frames and trim, fascia, and shingles on sixteen of the buildings.  Replacement cost value for that damage was determined to be $100,628.30, and actual cash value was determined to be $28,242.63.  Pursuant to the policy language, replacement cost value is paid only when the insured actually replaces the damaged property; otherwise, the actual cash value is paid.  Because American Family had no evidence of replacement, it paid the actual cash value.  Park Meadows does not contend that American Family breached the contract by paying actual cash value rather than replacement cost value.

that roof replacement would "be strictly for aesthetic reasons" because there was no "functional damage." American Family then reaffirmed its denial for Park Meadows' claim for full roof replacement on June 30, 2016.

¶9     Park Meadows filed this suit on July 29, 2016.

¶10    American Family moved to stay the litigation and compel an appraisal. At a motion hearing, American Family argued that it did not have ample opportunity to invoke the appraisal right because despite its repeated requests for a cost estimate, it had never received one prior to the litigation, and it needed an "amount of loss" before seeking appraisal. Park Meadows conceded that it did not provide "an actual estimate" prior to filing suit, but it argued that "simply because an actual estimate was not presented does not mean that [American Family] [did] not have at least constructive knowledge" and that American Family was "on notice" well before the filing of the lawsuit that "there was a stark dispute."

¶11    The trial court noted that American Family "did not drag its feet" when the claim was initially filed in May 2015 and that it had promptly adjusted the claim and provided a check for covered losses within thirty days of learning of the claim. The trial court noted the additional reports prepared by Park Meadows' experts and cited four emails from American Family responding to the reports and requesting a cost estimate for the roof damage. It concluded:

> It seems to this [c]ourt, looking at the fact that you could go for the appraisal, if you disagree on the amount of the loss, there never was a disagreement on the amount of loss.
>
> ….

5

... American Family really didn't have ample opportunity to demand an appraisal, because they didn't get their request for the amount of loss answered.

….

… [U]nder this contract [Park Meadows] was to provide estimate under the insurance policy, didn't do it. Didn't provide amount of loss, which I believe is a condition precedent in this case in the context of this case and these facts to making a decision whether you want to compel [appraisal] or not. Amount of loss [is] material to making that decision. And Park Meadows didn't give American Family an ample—an ample opportunity to compel the appraisal.

¶12     As noted above, the parties stipulated to the scope of the appraisal. They stipulated as follows:

1. The [c]ourt has compelled the parties to resolve the dispute regarding the actual cash value and the replacement cost value of the loss and/or damage to the [Park Meadows buildings] … caused by wind and hail loss occurring on August 1, 2014 through the Appraisal clause of the insurance contract[.]

….

9. The parties agree that in regards to the Appraisal of the particular insurance claims at issue, scope and cause are appraisable issues, and the Appraisal Panel is authorized to address the scope or extent of hail and wind loss and/or damage, as well as the cause of any observed loss and/or damage.

¶13     The appraisal panel ultimately issued a binding award to Park Meadows, determining that the replacement cost value of the claim was $145,725.35. American Family timely paid the balance owed. Park Meadows brought a motion for reconsideration of the order compelling the appraisal, and the trial court denied the motion.

¶14    American Family then moved for summary judgment. Park Meadows moved to take additional discovery. An exhibit attached to that motion was an estimate Park Meadows had obtained in October 2015 that put the replacement cost value of the loss at $964,529.51.

¶15    The trial court subsequently granted American Family's motion for summary judgment. The trial court stated that the outcome of the appraisal process was evidence that American Family had not breached the contract:

> [I]t came down to damage on the roof caps and such versus damage on shingles, and if there was enough there for the appraisers to say, there's enough damage on these shingles to replace the entire roof structure, then the plaintiffs would have had an argument, but the appraisers … in the end made a decision that the [$155,671.01] proposal was more appropriate than replacing the entire roof structure on these buildings.
>
> I can't find that there was a breach of contract at this point in time, in that American Family did, after the [c]ourt ordered the appraisal, did pay that additional $55,000.

¶16    Having concluded that there was no breach, the trial court also concluded that there was no basis to pursue the bad faith claim. This appeal follows.

## DISCUSSION

### I.    Policy language and relevant law.

¶17    The policy sets forth the duties of both parties and an appraisal procedure the parties may use in the event of a disagreement about the amount of a covered loss:

Section I – Property

….

E. Property Loss Conditions

….

2. Appraisal

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

….

3. Duties In The Event Of Loss Or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:

….

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

….

(8) Cooperate with us in the investigation or settlement of the claim.

¶18    In *Lynch v. American Family Mutual Insurance Co.*, 163 Wis. 2d 1003, 473 N.W.2d 515 (Ct. App. 1991), this court addressed the type of dispute presented in this case—the insurer had invoked the right to demand appraisal after the insured commenced a lawsuit over the claimed loss, and the trial court had stayed the litigation and compelled appraisal. *Id.* at 1005.

8

¶19    In *Lynch* we described the scope of an appraisal process as more limited than that of an arbitration process:

> Although the words "appraisal" and "arbitration" are occasionally used interchangeably, there is a distinction between the two terms. 14 *Couch on Insurance 2d* (rev. ed. 1982) §§ 50:2, 50:3, 50:5-7. Specifically:

> "An agreement for arbitration, as that term is now generally used, encompasses the disposition of the entire controversy between the parties upon which award a judgment may be entered, whereas an agreement for an appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for settlement by negotiation, or litigated in an ordinary action upon the policy."

*Lynch*, 163 Wis. 2d at 1009-10.

¶20    The question presented in *Lynch* was "whether an insurance company may invoke the appraisal clause in its policy *subsequent to the filing of a lawsuit against it* when it had ample opportunity to invoke the clause prior to commencement of the action but failed to do so." *Id.* at 1005 (emphasis added). In that case, the insured had provided an estimate of the loss prepared by a contractor, and the insured's estimate was more than double that of the insurance company. *Id.* at 1005-06. After procuring two additional estimates (both of which were much lower than the insured's), the insurance company sent a letter to the insured before the lawsuit that did not invoke the appraisal demand right but rather "expressed an intention to do so 'in the event a law suit … is commenced.'" *Id.* at 1006-08.

¶21    This court held that in the absence of a policy provision to the contrary, "an insurance company may not demand an appraisal of a loss after the commencement of an action by the insured on that loss when the insurance

company failed to demand the appraisal prior to the lawsuit even though it had an opportunity to do so." *Id.* at 1008.

¶22 The plaintiff in a later case, *Farmers Automobile Insurance Ass'n v. Union Pacific Railway Co.*, 2009 WI 73, 319 Wis. 2d 52, 768 N.W.2d 596, argued that the holding in *Lynch* "would have allowed [the insured] to refuse Farmer's demand to participate in the Policy's appraisal process." *Id.*, ¶35. But our supreme court rejected this argument: "*Lynch* did *not hold that invocation of a binding appraisal clause is per se precluded* after one party files suit." *Id.*, ¶36 (emphasis added). "Rather, *Lynch* held that the insurer in that case could not invoke the appraisal clause when it 'had ample opportunity' to do so before suit was filed." *Id.* (citing *Lynch*, 163 Wis. 2d at 1013).

>    **II.    American Family did not have "ample opportunity" to invoke the appraisal clause prior to this suit because its right to appraisal cannot be invoked until Park Meadows provides an "amount of loss," and Park Meadows did not do so before filing suit.**

### A. Standard of review.

¶23 "Insurance contract interpretation presents a question of law that is reviewed *de novo*." *Folkman v. Quamme*, 2003 WI 116, ¶12, 264 Wis. 2d 617, 665 N.W.2d 857. "An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy." *Id.* "Therefore, the first issue in construing an insurance policy is to determine whether an ambiguity exists regarding the disputed coverage issue." *Id.*, ¶13. "If there is no ambiguity in the language of an insurance policy, it is enforced as written, without resort to rules of construction or applicable principles of case law." *Id.*

**B. No ambiguity exists in this policy about what triggers the right to demand appraisal.**

¶24    Both relevant policy provisions plainly reference "the amount of loss." The appraisal provision provides a mechanism for resolution when the parties "disagree on the amount of loss[.]" The provision enumerating the insured's duties in the event of loss or damage states that an insured is required, upon the insurer's request, to "give [the insurer] complete inventories of the damaged and undamaged property," and further requires the insured to "[i]nclude quantities, costs, values and *amount of loss claimed*" (emphasis added).

¶25    The trial court found that American Family made requests for the amount of loss prior to the commencement of the litigation and that American Family received no estimate of the amount of loss prior to the commencement of the litigation. These findings of fact are not disputed, and, taken together with the unambiguous policy language and the holding in *Lynch*, 163 Wis. 2d at 1008, and clarified in *Farmers Automobile Insurance Ass'n*, 319 Wis. 2d 52, ¶35, they are dispositive of the question.

**C. *Lynch* is distinguishable and does not bar a post-litigation appraisal demand in this case.**

¶26    Park Meadows argues that when applied to these facts, the holding in *Lynch* means two things. First, that American Family's decision to deny its claim for roof replacement "served as a waiver of American Family's right to demand appraisal." Second, that American Family had "ample opportunity" to invoke the appraisal process because it was "provided with multiple reports indicating that Park Meadows was seeking replacement of all shingle roofs at the property[.]"

¶27 For the proposition that American Family's denial letter constituted a waiver of its right to invoke the appraisal process, Park Meadows merely cites the language from *Lynch* stating that an insurer who fails to demand appraisal prior to the lawsuit "even though it had an opportunity to do so" may not demand the appraisal of a loss after the insured commences an action. *See Lynch*, 163 Wis. 2d at 1008. Even if this language is read as a "waiver" or "forfeiture" of the right, it is qualified by the limiting language "even though it had an opportunity to do so[.]" *See id.* The meaning of that phrase is what we are addressing in this case. Therefore, that language alone merely means that in some circumstances, failing to demand appraisal constitutes a "waiver" in the sense that insurers *who have an opportunity* to invoke appraisal and do not do so prior to litigation cannot then invoke appraisal after litigation starts. In short, that language does not answer whether American Family is in the category of insurers who can invoke appraisal after litigation commences or in the category of insurers who cannot.

¶28 In arguing that American Family had ample opportunity to invoke appraisal, Park Meadows states that American Family had opportunities that "far exceed" those of the insurer in *Lynch* because it received multiple expert reports concerning Park Meadows' claim of roof replacement. This argument fails to note the fact that makes *Lynch* easily distinguishable from this case: in *Lynch*, the insured had provided an estimate of the amount of loss to the insurer prior to the commencement of the suit. Unlike the insurer in *Lynch*, American Family had repeatedly requested an amount of loss, pursuant to the policy language, and did not receive it in response prior to the commencement of this action.

¶29 Park Meadows further argues that under *Lynch*, "a post lawsuit demand for appraisal is not sufficient to stop litigation where the contract of insurance does not specifically make appraisal a precondition to commencement

of action." It argues that "there is nothing in the policy that requires the parties to complete the appraisal process prior to the commencement of a lawsuit" and it therefore "has the right to a trial by jury." Park Meadows' argument is that unless the policy allows it, an insurer is "per se precluded" from invoking a binding appraisal clause after one party files suit. That is not the law. That interpretation of *Lynch* was expressly refuted by our supreme court in *Farmers Automobile Insurance Ass'n* when it said, "*Lynch did not hold that invocation of a binding appraisal clause is per se precluded after one party files suit.*" *Farmers Auto. Ins.*, 319 Wis. 2d 52, ¶36 (emphasis added). "Rather, *Lynch* held that the insurer in that case could not invoke the appraisal clause when it 'had ample opportunity' to do so before suit was filed." *Id.* (citing *Lynch*, 163 Wis. 2d at 1013). Park Meadows' condition precedent argument does not address the legal question presented, which is whether American Family had ample opportunity to invoke the appraisal before suit was filed. As noted above, under the language of the appraisal provision, American Family did not have the opportunity to invoke the appraisal clause pre-litigation.

### III. Summary judgment is proper because Park Meadows has identified no genuine issues of material fact.

#### A. Standard of review.

¶30 We review the disposition of a motion for summary judgment *de novo*, applying the same methodology the trial courts apply. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987); *Borek Cranberry Marsh, Inc. v. Jackson Cty.*, 2010 WI 95, ¶11, 328 Wis. 2d 613, 785 N.W.2d 615 ("We review the grant of a motion for summary judgment *de novo*[.]").

¶31   "The first step of that [summary judgment] methodology requires the court to examine the pleadings to determine whether a claim for relief has been stated." **Green Spring Farms**, 136 Wis. 2d at 315.  "In testing the sufficiency of a complaint, we take all facts pleaded by plaintiff[] and all inferences which can reasonably be derived from those facts as true."  *See id.* at 317.  We liberally construe pleadings "with a view toward substantial justice to the parties."  *See id.* (citing WIS. STAT. § 802.02(6) (2017-18)[6]).    Under the second step of this methodology, "[i]f a claim for relief has been stated, the inquiry then shifts to whether any factual issues exist."  *Id.* at 315.  Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See* WIS. STAT. § 802.08(2); *see also* **Columbia Propane, L.P. v. Wisconsin Gas Co.**, 2003 WI 38, ¶11, 261 Wis. 2d 70, 661 N.W.2d 776 (citing and applying § 802.08(2) (2001-02)).

### B. Park Meadows has waived any challenge to the summary judgment order.

¶32   In its opening brief, although Park Meadows argues that it is entitled to reversal of summary judgment on the grounds of material factual disputes, it does not identify *any* disputes of fact, let alone disputes of material fact, that would preclude summary judgment.  In its reply brief, Park Meadows fails to respond to American Family's arguments on the summary judgment question and abandons the summary judgment argument altogether.  Unrefuted arguments are

---

[6] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

deemed admitted. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979).

### C. Even if Park Meadows has not waived any challenge to the summary judgment order, it has identified no entitlement to reversal of the summary judgment order.

¶33    Even if it had not waived the argument, Park Meadows' summary judgment argument would fail.

¶34    First, it would fail because the record shows no material factual dispute. Park Meadows argues in its opening brief that issues of material fact exist regarding whether American Family breached its contract or acted in bad faith. Its brief then recites the chronology of the case up through the appraisal award. It does not identify any genuine issue as to any material fact. It points to no disputed facts at all. Rather, it points to the undisputed fact that at the conclusion of the appraisal process, the "competent and impartial appraiser"—selected by American Family (pursuant to the policy's requirement)—and the panel's umpire signed an award for $155,671.01 for this claim. Although the appraisal panel concluded a different amount of loss than American Family's own initial assessment of the amount of loss ($100,628.30), the different amounts are not material factual disputes within the meaning of summary judgment methodology. An appraisal process, by its very nature, would contemplate the possibility, at least, of a different result.

¶35    Second, Park Meadows provides no authority for interpreting appraisal panel awards to create material factual disputes or to imply breach of contract or bad faith. Significantly, the parties do not dispute the amounts in question. On appeal, Park Meadows does not challenge the amount of the

appraisal award. Park Meadows simply argues for a different legal conclusion due to the fact of these two undisputed amounts.

¶36    Ultimately, the question here is whether, based on these undisputed amounts, and the two years' wait between initial payment and final payment, Park Meadows is entitled to survive summary judgment on its claims for relief, namely, breach of contract and bad faith. We conclude it is not because this undisputed factual record does not support the legal requirements for breach of contract or bad faith. Park Meadows fails to show any breach of contract. American Family followed the contract and was entitled to an appraisal. Park Meadows agreed to the appraisal award. Because American Family did not breach the contract, Park Meadows has failed to show any bad faith.

¶37    In summary, we therefore conclude that American Family was not barred from invoking its right to appraisal after the start of the litigation because it did not have an opportunity to do so before the litigation. No part of the appraisal panel's award was appealed, and American Family timely paid the balance owed. Therefore, the appraisal was valid. Park Meadows has not identified any issues of material fact that would preclude summary judgment. We therefore affirm the orders of the trial court.

*By the Court.*—Orders affirmed.

Not recommended for publication in the official reports.